**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3481

*Counsel for Proposed Lead Plaintiff Public
Employees' Retirement System of Mississippi,
and Proposed Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
Laura H. Posner
(lposner@cohenmilstein.com)
Alexandra Gray
(agray@cohenmilstein.com)
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797

*Counsel for Proposed Lead Plaintiff Arkansas
Public Employees' Retirement System, and
Proposed Lead Counsel for the Class*

[Additional counsel in signature block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED UNION OF ROOFERS, WATERPROOFERS & ALLIED WORKERS LOCAL UNION NO. 8 WBPA FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TRADE DESK, INC., JEFFREY TERRY GREEN, and LAURA SCHENKEIN,<br><br>Defendants. | Case No.: 2:25-cv-01396-CAS-DFM<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**<br><br>Date: May 19, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8D, 8th Floor<br>Judge: Hon. Christina A. Snyder |

***Captions continued on next page.***

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM

MANUEL SAVORELLI, Individually and On Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

THE TRADE DESK, INC., JEFF T. GREEN, and LAURA SCHENKEIN,

        Defendants.

Case No.: 2:25-cv-01915-CAS-DFM

<u>CLASS ACTION</u>

---

NEW ENGLAND TEAMSTERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

THE TRADE DESK, INC., JEFFREY T. GREEN, LAURA SCHENKEIN, and SAMANTHA JACOBSON,

        Defendants.

Case No.: 2:25-cv-01936-CAS-DFM

<u>CLASS ACTION</u>

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ....................................................................................4

ARGUMENT .........................................................................................................7

I.     Arkansas and Mississippi Are the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff...........................................................7

      A.     Arkansas and Mississippi's Motion Is Timely ...............................7

      B.     Arkansas and Mississippi Have the Largest Financial Interest in the Relief Sought by the Class........................................8

      C.     Arkansas and Mississippi Are Typical and Adequate....................8

      D.     Arkansas and Mississippi Are Precisely the Type of Lead Plaintiff Envisioned By the PSLRA .............................................10

II.     The Court Should Approve Arkansas' and Mississippi's Selection of Counsel ....................................................................................14

III.     The Related Actions Should Be Consolidated.........................................16

CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Andrade v. Am. Apparel, Inc.*,
  2011 WL 13130706 (C.D. Cal. Mar. 15, 2011) ........................................................17

*Basile v. Valeant Pharm., Int'l, Inc.*,
  2015 WL 13652714 (C.D. Cal. May 5, 2015)...........................................................13

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) .....................................................................................14

*Ferreira v. Funko, Inc.*,
  2020 WL 3246328 (C.D. Cal. June 11, 2020)...........................................................16

*In re Aqua Metals Sec. Litig.*,
  2018 WL 4860188 (N.D. Cal. May 23, 2018)...........................................................13

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009).................................................................................17

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ..............................................................................7, 8, 11

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ...............................................................................*passim*

*In re Versata, Inc. Sec. Litig.*,
  2001 WL 34012374 (N.D. Cal. Aug. 20, 2001).........................................................11

*Kangas v. Illumina, Inc.*,
  2024 WL 1587463 (S.D. Cal. Apr. 11, 2024) ...........................................................11

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007)..................................................................................17

*Pampena v. Musk*,
  2023 WL 3082341 (N.D. Cal. Apr. 24, 2023)...........................................................11

*Schriver v. Impac Mortg. Holdings, Inc.*,
2006 WL 6886020 (C.D. Cal. May 2, 2006) ................................................................ 9

*Schwartz v. Opus Bank*,
2017 WL 5468820 (C.D. Cal. Feb. 23, 2017) ............................................................. 9

*Shenwick v. Twitter, Inc.*,
2016 WL 10672428 (N.D. Cal. Dec. 22, 2016) .................................................... 10, 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..................................................................................... 9

*Takeda v. Turbodyne Techs., Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...................................................................... 10

**STATUTES**

15 U.S.C. § 78u-4 *et seq.* ................................................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................ 8, 9

Fed. R. Civ. P. 42 ................................................................................................ 1, 16

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .............. 10

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ............................. 10

Arkansas Public Employees' Retirement System ("Arkansas") and Public Employees' Retirement System of Mississippi ("Mississippi") respectfully submit this memorandum of points and authorities in support of their Motion for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of Related Actions ("Motion"). Arkansas and Mississippi move this Court, under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order: (i) appointing Arkansas and Mississippi as Lead Plaintiff; (ii) approving Arkansas' and Mississippi's selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the proposed Class; (iii) consolidating the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (iv) granting such other and further relief as the Court may deem just and proper.

## INTRODUCTION

The Related Actions allege that The Trade Desk, Inc. ("Trade Desk" or the "Company") and certain of its senior executives (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, between May 9, 2024, and February 12, 2025, inclusive (the "Class Period").[1] Specifically, the Related Actions allege that Defendants made misrepresentations that Kokai, the Company's new artificial

---

[1] The Related Actions assert substantially similar allegations against overlapping Defendants during the same Class Period. *See United Union of Roofers, Waterproofers & Allied Workers Loc. Union No. 8 WBPA Fund v. The Trade Desk, Inc.*, No. 2:25-cv-01396-CAS-DFM (C.D. Cal. filed Feb. 19, 2025) ("*Local 8*"), ECF No. 1; *Savorelli v. The Trade Desk, Inc.*, No. 2:25-cv-01915-CAS-DFM (C.D. Cal. filed Mar. 5, 2025) ("*Savorelli*"), ECF No. 1 (adding to the class definition Trade Desk call and put options); *New England Teamsters Pension Fund v. The Trade Desk, Inc.*, No. 2:25-cv-01936-CAS-DFM (C.D. Cal. filed Mar. 5, 2025) ("*NE Teamsters*"), ECF No. 1 (adding Samantha Jacobson as a Defendant).

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                1

intelligence ("AI") advertisement forecasting tool, would be simple for clients to transition to from the Company's older ad-buying platform, and transformational to Trade Desk's business. Trade Desk investors, including Arkansas and Mississippi, incurred significant losses as they learned that Defendants had knowingly botched the transition from the old ad-buying platform to Kokai, and that they were forced to intentionally slow the Kokai rollout as a result.

The PSLRA provides that the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, the "most adequate plaintiff" is the "person or group of persons" that has the "largest financial interest" in the relief sought by the Class in this litigation and that also makes a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Arkansas and Mississippi are the "most adequate plaintiff" under the PSLRA, and should be appointed Lead Plaintiff by virtue of, among other things, the approximately $16.5 million in losses, as calculated under a last-in, first out ("LIFO") basis, that they incurred on their investments in Trade Desk common stock during the Class Period.[2]

In addition to asserting the largest financial interest, Arkansas and Mississippi readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class, and they will fairly and adequately represent the interests of the Class. Arkansas and Mississippi are paradigmatic lead plaintiffs under the PSLRA because they are sophisticated institutional investors with a substantial financial interest in the litigation and have experience supervising the work of outside

---

[2] Arkansas' and Mississippi's PSLRA-required Certifications are provided as Exhibit A to the Declaration of Jonathan D. Uslaner filed herewith ("Uslaner Decl."). In addition, charts setting forth calculations of Arkansas' and Mississippi's losses are provided as Exhibit B to the Uslaner Decl. All emphasis is added, and internal citations omitted unless noted.

counsel in complex litigation.[3] *See* Uslaner Decl., Ex. C ¶¶ 2-8. Indeed, Arkansas and Mississippi have the proven ability to work collaboratively to oversee the prosecution of securities class actions, including in their current role as lead plaintiff in a securities class action against Seagate Technology Holdings plc. *See id.* ¶ 8. Furthermore, both Arkansas and Mississippi have dedicated personnel who are experienced at overseeing the prosecution of securities class actions and would bring those resources to bear on behalf of the Class in this action. *See id.* ¶¶ 4, 7. Accordingly, Arkansas and Mississippi are precisely the type of sophisticated institutions that Congress intended to lead securities class actions: institutions that possess the capability, resources, and experience to oversee this complex litigation and guarantee the vigorous prosecution of the action.

As set forth in greater detail in their Joint Declaration, Arkansas and Mississippi fully understand the lead plaintiff's obligations to the proposed Class under the PSLRA and are willing and able to undertake the responsibilities of the lead plaintiff to ensure the vigorous prosecution of this litigation. Prior to seeking appointment as Lead Plaintiff, representatives from Arkansas and Mississippi participated in a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their respective Funds' common goals in the litigation. *See* Uslaner Decl., Ex. C ¶ 13. Arkansas and Mississippi also discussed how they will jointly prosecute this action, and otherwise ensure the vigorous yet cost-effective prosecution of this litigation. *See id.* ¶¶ 13-16.

Arkansas' and Mississippi's adequacy is also demonstrated through their selection of Cohen Milstein and Bernstein Litowitz—law firms with an established track record of achieving substantial recoveries for the benefit of investors—to serve as

---

[3] The Joint Declaration of Amy Fecher and Laken H. Ryals in Support of the Motion of Arkansas Public Employees' Retirement System and Public Employees' Retirement System of Mississippi for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of Related Actions ("Joint Declaration") is provided as Exhibit C to the Uslaner Decl.

Lead Counsel for the Class. Cohen Milstein and Bernstein Litowitz are both eminently qualified to prosecute this case and have extensive experience in securities fraud litigation—including together as co-lead counsel—which will benefit the Class.

Based on Arkansas' and Mississippi's significant financial interest in the outcome of this action, and their commitment and ability to jointly oversee the prosecution of the litigation in a cohesive and coordinated manner, Arkansas and Mississippi request that the Court appoint them as Lead Plaintiff and approve their selection of Cohen Milstein and Bernstein Litowitz as Lead Counsel. Arkansas and Mississippi also respectfully request that the Court consolidate the Related Actions pursuant to Rule 42(a).

## STATEMENT OF FACTS

Trade Desk operates globally as a technology company, offering a self-service, cloud-based, ad-buying platform that allows marketers to plan, manage, optimize, and measure data-driven ad campaigns. *Local 8*, ECF No. 1 ¶¶ 2, 25.

Prior to the start of the Class Period, on June 6, 2023, Trade Desk launched Kokai, a generative AI forecasting tool that it claimed would enable users to more effectively deploy their advertising spending. *Id.* ¶¶ 3, 26. Immediately after the Kokai launch, Trade Desk began to try to transition its clients from its older ad-buying platform, Solimar, to Kokai. *Id.* ¶¶ 4, 27. Throughout the Class Period, Trade Desk told investors that transferring clients to Kokai from Solimar would be seamless, and that the transition from Solimar to Kokai would be complete by the end of 2024. *Id.* ¶¶ 4, 27. Further, Trade Desk told investors that Kokai was transformational to Trade Desk's business, calling it the "largest platform overhaul" in Trade Desk's history. *Id.* ¶¶ 5, 28; *see also id.* ¶ 6.

The Class Period begins on May 9, 2024, the first day of trading after Trade Desk issued a press release announcing its financial results for the first quarter of 2024, ending March 31, 2024. *Id.* ¶ 29. The press release reported first quarter revenue of $491 million, representing growth of 28% year-over-year. *Id.* In the press release,

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                4

Defendant Green stated that "with significant AI advances in our Kokai platform, we are better positioned than ever to deliver premium value to advertisers and continue to gain market share." *Id.* During the earnings call held the same day, Green touted the success of the Kokai rollout, attributing the revenue growth in the first quarter to Kokai. *Id.* ¶ 30. On the same call, Defendant Schenkein also recognized Kokai as contributing to the Company's growth and profitability. *Id.* ¶ 31.

On August 8, 2024, after the markets closed, Trade Desk issued a press release announcing its financial results for the second quarter of 2024, ended June 30, 2024, reporting second quarter revenue of $585 million and 26% revenue growth year-over-year. *Id.* ¶ 32. In the press release, Green stated that as Kokai continued to roll out, Trade Desk was "intuitively surfacing value for advertisers, integrating data into every decision, advancing the full power of AI as a co-pilot, and enabling advertisers to maximize the potential of their first party data." *Id.* ¶ 32. In the earnings call the same day, Green touted Kokai as the Company's "most ambitious platform to date" and represented its usefulness to Trade Desks' customers. *Id.* ¶ 33. Green also expressed that he was "incredibly encouraged by the early results from Kokai," including the pace of the transition from Solimar, and that "performance metrics have improved by about 25%, helping to unlock performance budgets on our platform for years to come." *Id.* ¶ 34.

On November 7, 2024, after the markets closed, Trade Desk issued a press release announcing its financial results for the third quarter of 2024, ended September 30, 2024, reporting third quarter revenue of $628 million and providing fourth quarter revenue guidance of $756 million. *Id.* ¶ 36. Green stated in the press release that clients were seeing "performance improvements" with Kokai. *Id.* During the earnings call the same day, Green again assured investors that Trade Desk was "already seeing the results of Kokai performance today, but we're just getting started." *Id.* ¶ 37. Schenkein similarly commended Kokai as helping to "strengthen[] [the Company's] foundation" and "position[ing] [the Company] for durable growth." *Id.* During the question-and-answer

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                                5

portion of the call, Green assured an analyst that Kokai was a trustworthy platform for users to understand their metrics compared to other similar platforms. *Id.*¶¶ 38-39.

The Complaint alleges that the statements above, among other similar statements, were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading. *Id.* ¶ 40.[4]

According to the Complaint, on February 12, 2025, investors began to learn the truth regarding the Kokai rollout execution challenges that Trade Desk had been facing. On that day, Trade Desk issued a press release announcing its financial results for the fourth quarter and full year of 2024, ended December 31, 2024. *Local 8*, ECF No. 1 ¶ 41. In the press release, Trade Desk reported fourth quarter revenue of $741 million— below the Company's previously issued guidance of $756 million and analysts' estimates of $759.8 million. *Id.* Additionally, Trade Desk provided revenue guidance of at least $575 million for the first quarter of 2025, missing analysts' estimates of $581.5 million. *Id.* In the press release, Green expressed being "disappointed" and explained that the Company "undertook a reorganization to accelerate opportunities across CTV, retail media, identity, supply chain optimization, and audio[,] while forging ahead with innovations like Kokai. . . ." *Id.* ¶ 42. During the earnings call that same day, Green disclosed that Trade Desk had yet to onboard all of its clients onto Kokai, and that maintaining both its old Solimar system and Kokai "slow[ed] [the Company] down." *Id.* ¶ 43. In response to an analyst's question, Green admitted that Trade Desk rolled out Kokai "slower than we anticipated," but added that the slower

---

[4] The complaint in the *NE Teamsters* action also alleges that Defendants failed to disclose that Trade Desk faced significant competition that was taking substantial market share from Trade Desk, and that Trade Desk's engineering and sales team were not adequately structured to facilitate the Kokai rollout and diffuse the mounting competition. *See NE Teamsters*, ECF No. 1 ¶¶ 7, 59; *see also id.* ¶¶ 30, 35-38, 40-41, 44, 49, 51-52, 57 (alleging materially false and misleading statements relating to Trade Desk's competitiveness).

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                 6

rollout was "deliberate." *Id.* ¶ 44. Analysts reacted negatively to the news of the disappointing pace of the Kokai rollout. *See id.* ¶¶ 45-47.

On this news, Trade Desk Class A common stock dropped $40.31 per share, or more than 32%, from a closing price of $122.23 per share on February 12, 2025, to a closing price of $81.92 per share on February 13, 2025. *Id.* ¶ 48.

## ARGUMENT

### I. Arkansas and Mississippi Are the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff

Arkansas and Mississippi respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the federal securities laws and provides a presumption in favor of the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria."); *In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021) (same). As set forth below, Arkansas and Mississippi believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### A. Arkansas and Mississippi's Motion Is Timely

The PSLRA allows any member of the class or group of class members to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). On February 19, 2025, the first of the Related Actions, *Local 8*, was filed in this District. That same day, counsel for the plaintiff in the *Local 8* action published notice on *Globe Newswire*, advising putative Class members of the pendency of the action and claims asserted, the Class Period, and the right to move the Court to be appointed as Lead Plaintiff by April 21,

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                    7

2025. *See* Uslaner Decl., Ex. D (Notice of Pendency).[5] Accordingly, Arkansas and Mississippi's Motion is timely.

**B.     Arkansas and Mississippi Have the Largest Financial Interest in the Relief Sought by the Class**

Arkansas and Mississippi should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class" in the Related Actions. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, Arkansas and Mississippi suffered losses of approximately $16.5 million as calculated under a LIFO basis, on their Class Period purchases of 326,040 shares of Trade Desk common stock. *See* Uslaner Decl., Exs. A-B. To the best of Arkansas' and Mississippi's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Arkansas and Mississippi have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are entitled to the presumption under the PSLRA that they are the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**C.     Arkansas and Mississippi Are Typical and Adequate**

In addition to possessing the largest financial interest in the outcome of the litigation, Arkansas and Mississippi satisfy the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *see also Cavanaugh*, 306 F.3d at 730 n.5. At the lead plaintiff stage, "the Rule 23 determination should be based on only the movant's pleadings and declarations." *Mersho*, 6 F.4th at 899. The Court need not raise its inquiry to the level required in ruling on a motion for class certification—instead, only "a

---

[5] *See also* Minutes of Zoom Status Conference, *Local 8*, ECF No. 25 (stating that the "deadline to file a Motion for Appointment of Lead Plaintiff or Lead Counsel [is] April 21, 2025").

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM                    8

preliminary showing" of typicality and adequacy is necessary. *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 WL 6886020, at *5 (C.D. Cal. May 2, 2006). Moreover, once the movant with the largest financial interest has made a "prima facie showing of adequacy and typicality," rebutting the PSLRA's presumption in favor of the movant "requires proof that the presumptive lead plaintiff is not adequate." *Mersho*, 6 F.4th at 899. As detailed below, Arkansas and Mississippi satisfy these requirements.

Arkansas' and Mississippi's claims are typical of the claims of other Class members. "Claims are 'typical' under Rule 23 if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Schwartz v. Opus Bank*, 2017 WL 5468820, at *2 (C.D. Cal. Feb. 23, 2017). Here, Arkansas, Mississippi, and all other Class members suffered the same or similar injuries, their claims arise from the same course of conduct, and their legal arguments to prove Defendants' liability are identical. Like all other Class members, Arkansas and Mississippi purchased Trade Desk common stock during the Class Period, at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and were damaged as a result. Thus, Arkansas' and Mississippi's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other Class members. As such, Arkansas and Mississippi satisfy the typicality requirement of Rule 23.

Arkansas and Mississippi likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy is whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). Arkansas and Mississippi satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. Arkansas' and Mississippi's interests are

perfectly aligned with those of the other Class members, and there are no facts to suggest any actual or potential conflict of interest or other antagonism between Arkansas and Mississippi and other Class members. *See Mersho*, 6 F.4th at 900-01 (finding a group of investors to satisfy the adequacy requirement of Rule 23 where the group was the presumptive lead plaintiff and there was no evidence to suggest that the group would not adequately represent the class).

Finally, Arkansas and Mississippi have demonstrated their adequacy through their selection of Cohen Milstein and Bernstein Litowitz as Co-Lead Counsel to represent the Class in this action. As discussed more fully below, Cohen Milstein and Bernstein Litowitz are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively, including together. Accordingly, as demonstrated herein, Arkansas and Mississippi satisfy the requirements of Rule 23.

### D.   Arkansas and Mississippi Are Precisely the Type of Lead Plaintiff Envisioned By the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, Arkansas and Mississippi are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *See Shenwick v. Twitter, Inc.*, 2016 WL 10672428, at *2 (N.D. Cal. Dec. 22, 2016) ("Congress 'intended that the lead plaintiff provision would encourage institutional investors to take a more active role in securities class action lawsuits.'"); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) ("the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases"); *see also* S. Rep. No. 104-98, at 11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 690 ("The [c]ommittee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM          10

of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

The plain text of the PSLRA expressly permits the appointment of an appropriate group of class members, like Arkansas and Mississippi, to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id*. § 78u-4(a)(3)(B)(i). Accordingly, the U.S. Court of Appeals for the Ninth Circuit, and district courts throughout the Ninth Circuit, routinely hold that appropriate groups of class members may serve as lead plaintiff. *See Mersho*, 6 F.4th at 901 n.3, 903 & n.4 (overturning the district court's decision declining to appoint a group of investors with the largest financial interest, finding that decision "appears incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely"); *Cavanaugh*, 306 F.3d at 731 n.8 (finding that "'a group of persons' can collectively serve as a lead plaintiff"); *In re Silvergate Cap. Corp. Sec. Litig.*, No. 22-cv-1936, ECF No. 21 at 4 (S.D. Cal. Feb. 28, 2023) (appointing five institutional investors as lead plaintiff, with Cohen Milstein and Bernstein Litowitz as lead counsel) (Uslaner Decl., Ex. E); *Kangas v. Illumina, Inc.*, 2024 WL 1587463, at *5 (S.D. Cal. Apr. 11, 2024) (appointing two institutional investors as lead plaintiff, with Bernstein Litowitz as lead counsel); *In re Versata, Inc. Sec. Litig.*, 2001 WL 34012374, at *7 (N.D. Cal. Aug. 20, 2001) (appointing group of investors as lead plaintiff because they "possess[ed] both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action").

Arkansas and Mississippi understand the duties and responsibilities with which a Lead Plaintiff is charged under the PSLRA, including overseeing and supervising the litigation separate and apart from counsel. To this end, Arkansas and Mississippi have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties and responsibilities in this case. *See* Uslaner Decl., Exs. A & C; *see also Pampena v. Musk*, 2023 WL 3082341, at *4 (N.D. Cal. Apr. 24, 2023) (appointing group of investors that submitted joint declaration demonstrating ability to

"work together effectively"). As set forth in their Joint Declaration, Arkansas and Mississippi are a cohesive pair of sophisticated institutional investors that each determined that their joint appointment as Lead Plaintiff would advance the Class's best interest. *See* Uslaner Decl., Ex. C ¶¶ 9-12. Arkansas and Mississippi have combined assets under management of over $43 billion and have significant experience acting as fiduciaries and in selecting, hiring, and overseeing the activities of outside counsel in complex litigation. *See id.* ¶¶ 2-8. Indeed, Arkansas and Mississippi have a dedicated staff of professionals, including in-house legal staff, who will ensure the effective oversight of counsel and this litigation, and Mississippi further benefits from the counsel, experience, and resources of the OAG. *See id.* ¶¶ 4, 7.

Arkansas and Mississippi have also demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action. *See generally* Uslaner Decl., Ex. C. The decision to partner in seeking appointment as Lead Plaintiff was informed by Arkansas' and Mississippi's prior experiences serving together, and with other institutional investors, in securities class actions under the PSLRA, including cases in which their proposed Lead Counsel, Cohen Milstein and Bernstein Litowitz, served as lead counsel. *See id.* ¶¶ 3, 6, 8; *see also, e.g.*, *In re Merck & Co. Sec., Derivative & "ERISA" Litig.*, No. 05-cv-1151 (D.N.J.) ($1.06 billion recovery with Mississippi serving as co-lead plaintiff with three other investors, and Bernstein Litowitz serving as co-lead counsel); *In re Wells Fargo & Co. Sec. Litig.*, No. 20-cv-4494 (S.D.N.Y.) ($1 billion recovery with Mississippi serving as co-lead plaintiff with three other institutional investors, and Cohen Milstein and Bernstein Litowitz serving as co-lead counsel); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-cv-8093 (S.D.N.Y.) ($500 million recovery with Mississippi serving as co-lead plaintiff with another institutional investor, and Cohen Milstein and Bernstein Litowitz serving as co-lead counsel); *Baker v. SeaWorld Ent., Inc.*, No. 14-cv-2129 (S.D. Cal.) ($65 million recovery with Arkansas serving as co-lead plaintiff with another

institutional investor); *Hughes v. Huron Consulting Grp., Inc.*, No. 09-cv-4734 (N.D. Ill.) ($38 million recovery with Arkansas serving as co-lead plaintiff with four other institutional investors, and Cohen Milstein and Bernstein Litowitz serving as co-lead counsel); *In re Bancorp, Inc. Sec. Litig.*, No. 14-cv-952 (D. Del.) ($17.5 million recovery with Arkansas serving as co-lead plaintiff with another institutional investor, and Bernstein Litowitz serving as co-lead counsel). In addition, Arkansas and Mississippi are currently serving as lead plaintiff in *In re Seagate Technology Holdings plc Securities Litigation*, No. 23-cv-3431 (N.D. Cal.), with Bernstein Litowitz serving as co-lead counsel.

Arkansas and Mississippi have already taken significant measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. Before seeking appointment as Lead Plaintiff, representatives of Arkansas and Mississippi participated in a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits that the proposed Class will receive from the leadership of institutional investors with prior experience serving as lead plaintiff under the PSLRA, and the measures Arkansas and Mississippi have taken and will continue to take to ensure that the proposed Class's claims will be zealously and efficiently litigated. *See* Uslaner Decl., Ex. C ¶ 13. Through these measures and others, Arkansas and Mississippi have sought to ensure the proposed Class will receive the best possible representation.

In sum, Arkansas and Mississippi have demonstrated that they have the willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the proposed Class. Arkansas and Mississippi are precisely the type of institutional investors that Congress envisioned when enacting the PSLRA. *See, e.g., Basile v. Valeant Pharm., Int'l, Inc.*, 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015) (appointing group of two institutional investors as lead plaintiff); *In re Aqua Metals Sec. Litig.*, 2018 WL 4860188, at *4-5 (N.D. Cal. May 23, 2018) (appointing group of

investors that demonstrated they are "fully capable of representing the class's interests effectively").

## II. The Court Should Approve Arkansas' and Mississippi's Selection of Counsel

Under the PSLRA, the proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The lead plaintiff's choice of counsel should be approved, and the court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 711-12 (9th Cir. 2009). Here, Arkansas and Mississippi have selected Cohen Milstein and Bernstein Litowitz to serve as Lead Counsel for the Class.

Cohen Milstein is a firm with undisputed skill in litigating securities fraud class actions. Most recently, the *National Law Journal* named Cohen Milstein's Securities Litigation practice a Practice of the Year in 2024, *Chambers USA* named Cohen Milstein Top Ranked for Securities Litigation in 2024, and *Law 360* named Cohen Milstein 2023 Practice Group of the Year in Securities, among other accolades. Cohen Milstein also has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud. *See* Uslaner Decl., Ex. F (Cohen Milstein Firm Résumé). By applying innovative legal theories and litigation strategies, Cohen Milstein has recovered billions of dollars for investors in some of the largest and most complex securities class actions. A few of Cohen Milstein's notable recoveries include: as mentioned above, a $1 billion settlement in a securities fraud class action against Wells Fargo in *Wells Fargo*, No. 20-cv-4494, where Mississippi was co-lead plaintiff and Bernstein Litowitz was co-lead counsel; a $500 million settlement in the mortgage-backed securities class action against Countrywide Financial Corp., captioned *Maine State Retirement System v. Countrywide Financial Corp.*, No. 10-cv-302 (C.D. Cal.); a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland, captioned *New Jersey Carpenters Health Fund v.*

*The Royal Bank of Scotland Group, plc*, No. 08-cv-5310 (S.D.N.Y.); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks, captioned *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (S.D.N.Y.); a $175 million settlement in a certified class action stemming from the Deepwater Horizon oil spill, captioned *In re BP p.l.c. Securities Litigation*, No. 4:10-md-02185 (S.D. Tex.); and a $90 million settlement in a class action against MF Global, captioned *Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (S.D.N.Y.). Further, Cohen Milstein has a longstanding attorney-client relationship with both Arkansas and Mississippi.

Bernstein Litowitz is also among the preeminent securities class action law firms in the country. *See* Uslaner Decl., Ex. G (Bernstein Litowitz Firm Résumé). Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling more than $6 billion—the second-largest recovery in securities class action history—were obtained for the class. Bernstein Litowitz also secured a resolution of $2.43 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.). *See also In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.) (recovering $1.05 billion for investors, the largest recovery ever in a securities class action in the Ninth Circuit); *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.) (recovering $480 million for investors); *In re 3Com Corp. Securities Litigation*, No. 97-cv-21083 (N.D. Cal.) (recovering $259 million for investors); *In re Maxim Integrated Products, Inc. Securities Litigation*, No. 08-cv-832 (N.D. Cal.) (recovering $173 million for investors); *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.) (recovering $125 million for investors); and *In re Clarent Corp. Securities Litigation*, No. 01-cv-3361 (N.D. Cal.)

(conducting a four-week trial and obtaining a favorable jury verdict finding the CEO and former auditor of the defendant company liable, leading to a recovery of millions of dollars for investors). Bernstein Litowitz also has a longstanding attorney-client relationship with both Arkansas and Mississippi.

Thus, the Court may be assured that, by granting this Motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Arkansas' and Mississippi's selection of Cohen Milstein and Bernstein Litowitz as Lead Counsel for the Class.

### III. The Related Actions Should Be Consolidated

Under the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

District Courts have discretion under Rule 42(a) to consolidate "'actions . . . involv[ing] a common question of law or fact.'" *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *2 (C.D. Cal. June 11, 2020) (quoting Fed. R. Civ. P. 42(a)); *see also Twitter*, 2016 WL 10672428, at *1 (the "district court has broad discretion under this rule to consolidate cases pending in the same district").

Consolidation of the Related Actions is appropriate. The Related Actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against the same Defendants,[6] relating to the same period of time, and are premised on the same or similar categories of misstatements. While all three of the Related Actions assert claims on behalf of Trade Desk investors in Class A common stock, the *Savorelli* action also includes persons and entities that purchased or otherwise acquired Trade Desk call options, or sold Trade

---

[6] Each of the Related Actions include Defendants Trade Desk, Jeffrey T. Green, and Laura Schenkein, while the *NE Teamsters* action includes Defendant Samantha Jacobson.

Desk put options. This difference does not render consolidation inappropriate because such a difference in the pleadings does not outweigh the interests of judicial economy served by consolidation. *See Andrade v. Am. Apparel, Inc.*, 2011 WL 13130706, at *3 (C.D. Cal. Mar. 15, 2011) ("Neither Rule 42 nor the PSLRA demands that actions be identical before they are consolidated."); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009)("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation" (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). Accordingly, Arkansas and Mississippi respectfully request that the Related Actions be consolidated under the caption *In re Trade Desk Securities Litigation*, No. 2:25-cv-01396.

## CONCLUSION

For the foregoing reasons, Arkansas and Mississippi respectfully request that the Court enter an Order: (i) appointing them as Lead Plaintiff; (ii) approving their selection of Cohen Milstein and Bernstein Litowitz as Lead Counsel for the Class; (iii) consolidating the Related Actions; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated:  April 21, 2025                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

By:  */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3481

-and-

Hannah Ross
(hannah@blbglaw.com)
Avi Josefson

(avi@blbglaw.com)
Scott R. Foglietta
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400

*Counsel for Proposed Lead Plaintiff Public Employees' Retirement System of Mississippi, and Proposed Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Laura H. Posner
(lposner@cohenmilstein.com)
Alexandra Gray
(agray@cohenmilstein.com)
88 Pine St., 14th Floor
New York, NY 10005
Tel.: (212) 838-7797

-and-

Steven J. Toll
(stoll@cohenmilstein.com)
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel.: (202) 408-4600

*Counsel for Proposed Lead Plaintiff Arkansas Public Employees' Retirement System, and Proposed Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:25-cv-01396-CAS-DFM    18