CAZ HASHEMI, State Bar No. 210239
chashemi@wsgr.com
BENJAMIN M. CROSSON, State Bar No. 247560
bcrosson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

JESSICA L. SNORGRASS, State Bar No. 259962
jsnorgrass@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900

*Attorneys for Defendants*
*The Trade Desk, Inc., Jeffrey Terry Green,*
*Laura Schenkein and Samantha Jacobson*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| *In re The Trade Desk, Inc. Securities Litigation* | Case No.: 2:25-cv-01396-CAS-DFM <br><br> <u>CLASS ACTION</u> <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Date: March 9, 2026 <br> Time: 10:00 a.m. <br> Courtroom: 8D, 8th Floor <br> Before: Hon. Christina A. Snyder |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................1

II.  THE OPPOSITION CONFIRMS THE FAC DOES NOT STATE A SECTION 10(B) CLAIM ...........................................................................1

    A.  The FAC Pleads No Actionable Material Misstatement Or Omission ............................................................................................1

        1.  Plaintiff's Omissions Theory Does Not Suffice.........................1

            a.  Allegations Regarding Severe Defects Fail .....................2

            b.  Allegations Regarding Kokai Adoption Fail....................6

        2.  Puffery Statements Are Not Actionable ....................................9

        3.  Safe Harbor Protection Applies To The Forward-Looking Statements ...........................................................................10

        4.  Opinion Statements Are Not Actionable .................................11

        5.  Additional Reasons Warrant Dismissal...................................12

    B.  The FAC Pleads No Strong Inference Of Scienter ...........................13

        1.  The Former Employees Do Not Support Scienter....................13

        2.  Individual Defendant Stock Sales Do Not Support Scienter....16

        3.  Plaintiff's Remaining Scienter Allegations Fail......................17

    C.  The FAC Does Not Plead Loss Causation.........................................18

III.  THE REMAINING CLAIMS FAIL .............................................................19

IV.  CONCLUSION .......................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alghazwi v. Beauty Health Co.*,
2025 WL 2751076 (C.D. Cal. Sept. 23, 2025).............................................3, 7, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................4

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ...........................................................................14, 17

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008)..............................................................9, 19

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012)..................................................................18

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .......................................................17

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017)...............................................................................19

*Dolly v. GitLab Inc.*,
2025 WL 2372965 (N.D. Cal. Aug. 14, 2025)........................................................13

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)...............................................................................8, 11

*Golub v. Gigamon, Inc.*,
847 F. App'x. 368 (9th Cir. 2021)..........................................................................10

*In re Celera Corp. Sec. Litig.*,
2013 WL 4726097 (N.D. Cal. Sept. 3, 2013)..........................................................11

*In re Countrywide Fin. Corp. Deriv. Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008)...................................................................17

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .........................................................13

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................... 10, 11, 14

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ....................................................... 16

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) ............................................................... 3

*In re Siebel Systems, Inc. Sec. Litig.*,
  2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) .................................................... 12

*In re Tesla, Inc. Sec. Litig.*,
  477 F. Supp. 3d 903 (N.D. Cal. 2020) ............................................................... 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.*
  *Liability Litig.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ........................................................... 10

*Jaszczyszyn v. SunPower Corp.*,
  2024 WL 3463348 (N.D. Cal. July 17, 2024) ...................................................... 9

*McGovney v. Aerohive Networks, Inc.*,
  2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ...................................................... 13

*Nathanson v. Polycom, Inc.*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015) ................................................................. 19

*Ng. v. Berkeley Lights, Inc.*,
  2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ...................................................... 19

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ..................................................................... 14, 16

*Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*,
  2024 WL 5182634 (9th Cir. Dec. 20, 2024) ...................................................... 17

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ...................................................................... 15

*Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v.*
  *Stitch Fix, Inc.*,
  790 F. Supp. 3d 763 (N.D. Cal. 2025) ................................................................. 6

*Roberts v. Zuora, Inc.*,
2020 WL 2042244 (N.D. Cal. Apr. 28, 2020)...............................................10, 13

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...............................................................................6

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

## I.      INTRODUCTION

Plaintiff's Opposition confirms the FAC is merely an attempt to transform a typical technology product launch into securities fraud.

Plaintiff's theory, that Defendants lied to investors about severe Kokai "defects" that impeded adoption and revenue, cannot withstand Defendants' showing that the allegations are baseless.  To this end, Plaintiff's Opposition is replete with tacit concessions, including that Defendants did not, in fact, make "admissions" that Kokai adoption was "slower than publicly stated"; many challenged "defect" and adoption statements were not "technically false"; and Plaintiff cannot explain how FE7's finding that client adoption was 60% is inconsistent with TTD's alleged representations at the time of 50% adoption.  Plaintiff also ignores that throughout 2024, as publicly reported, Kokai was in its "early" stages and broader adoption was not even expected until the second half of 2025 (*i.e.*, *post*-class period).

## II.     THE OPPOSITION CONFIRMS THE FAC DOES NOT STATE A SECTION 10(B) CLAIM

Plaintiff ignores its PSLRA obligation to specify in detail *which allegations* render actionable *which statements* and why, and fails to tie its allegations to specific dates and disclosures, compelling dismissal.  MTD 5, 9.  Plaintiff's cursory denial ***does not explain*** how it meets its particularity obligations.  Opp. 6 n.6.[1]

### A.      The FAC Pleads No Actionable Material Misstatement Or Omission

#### 1.       Plaintiff's Omissions Theory Does Not Suffice

The FAC catalogues TTD's statements over a 21-month period and robotically repeats that once Defendants "tout[ed] Kokai," they were obligated to

---

[1] For ease of reference, this reply organizes certain of the Opposition's repetitive, fragmented arguments.

-1-

disclose its "significant defects," "lagging" adoption and "inflated" adoption numbers.  MTD 9.  But the Opposition never identifies "the who, what, when, where, and how" of its fraud allegations, as required.  MTD 8-9.  Nor does it explain how any statement "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists."  MTD 9.  Plaintiff's FEs do not fill this gap: none demonstrate "personal knowledge of the events they report," nor do their reports "indicate falsity of the challenged statements."  *Id*.

Significantly, the Opposition concedes that many challenged "defects" and adoption statements were not "technically false."  Opp. 8 n.7 (citing statements).  Plaintiff's contention they (or any others) were misleading—including purportedly because Kokai was not "a success"—errs.  *Id*.

### a.  Allegations Regarding Severe Defects Fail

Plaintiff claims Defendants "[did] not challenge the false or misleading nature of multiple challenged statements" about "defects," therefore "conceding" falsity.  Opp. 7 (citing ¶¶187, 199(d), 203(a)).  Not so: Defendants addressed Plaintiff's contentions despite its inadequate and obfuscating pleading tactics (MTD 5) and did not "concede" anything.[2]

***"Relevance Score":***  Plaintiff does not dispute that its "relevance score" allegations rest solely on FE1 (citing only FE1), that the FAC alleges no revenue impact from it or that TTD did not make guarantees about it.  Opp. 7-8; MTD 10.  FE1 merely alleges triple hearsay that FE1 understood from meetings (that FE1 did not attend) that "certain models" being tested for utilization were not working in "predictable and stable fashion" in certain "scenarios" and data science teams (not

---

[2] *E.g.*, MTD 16-17 (citing "¶¶199-200," discussing 6/28/2024 press release); MTD 17 (discussing Q2'24 call and "¶¶201-206"); MTD 9 (discussing Plaintiff's improper omnibus pleading tactic for Q1'24 results statements).  Plaintiff's waiver argument (unsupported by its unpublished Social Security disability benefits opinion (Opp. 7)) is a red herring.

including FE1) informed product teams who informed Green, before FE1 left TTD in "mid-2024[.]"  ¶¶31 n.3, 76.  From this, Plaintiff asserts TTD "place[d] ads with undesirable audiences," which finds no support in the FAC.  Opp. 7 (citing counsel's own unsupported "diaper" hypothetical, unattributed to FE1).  Plaintiff also mixes in a vague and unreliable allegation about an "A/A test" related to "bidding optimization," with no alleged connection to "relevance."  *Id*. (¶99).

Plaintiff's reliance on *Alghazwi v. Beauty Health Company*, 2025 WL 2751076 (C.D. Cal. Sept. 23, 2025) is misplaced.  Opp. 7-8.  There, well-pled facts described a disastrous product rollout, where customers returned over 50% of machines sold due to widespread defects, unsolved by outside engineering firms, completely at odds with proclamations of its "flawless," "tremendous success."  Nothing analogous is pleaded here.  And alleging the "time, place, and attendees of meetings where Relevance issues were discussed" does not solve the fact that those meetings did not include FE1.  Opp. 8 (¶¶74-76).  Claiming FE1's hearsay is not "vague and conclusory" falls flat; FE1 does not describe, *e.g.*, a *single* instance of erroneous analysis reported to a client, any customer dissatisfaction or any revenue impact.  *Id*.; MTD 10.

***"Sellers & Publishers"***:  Plaintiff concedes that its only support for alleging this list was "defective" is one "unnamed client" who did "a bit of A/B testing" and was not impressed.  Opp. 11; MTD 10-11.  The so-called "client" is apparently from Reddit.  ¶80.  Plaintiff's cited support to rely on the anonymous individual is inapposite, as it pertained to former *employees* found reliable who held "*significant* position[s]," offered "*significant* details" and whose information was *corroborated*.  Opp. 11 (citing *In re SeeBeyond Techs.*).  Further, Plaintiff's claim that two FEs and a third-party "corroborat[e]" that the list did not "meaningfully improve[] performance" (*id*. (¶82)) is wrong; paragraph 82 ***says nothing*** about the list (and no individual cited there is even mentioned in Plaintiff's allegations (at ¶80)).

-3-

***"Programmatic Guaranteed" Deals:***  The Opposition conflates a third-party article discussing "programmatic advertising" (¶69) with programmatic "guaranteed deals" (a type of ad purchase, ¶¶77-78).  Opp. 8.[3]  In any event, confronted with its own *AdWeek* article acknowledging that these deals "account for only a small share of spend," the Opposition labels the "magnitude" of spend "irrelevant[.]"  Opp. 9; MTD 11.  But its fallback argument that their absence "impeded adoption and spending on Kokai as a whole" is exaggerated and unsubstantiated; Plaintiff's cited FEs provide no particularized allegations of this (*see* ¶78: one-sentence, conclusory three FE accounts of deals not offered), and none allege any *actual* impact (let alone significant) on adoption or spend.  The Opposition's reliance on one anonymous source's hyperbolic comment in the article (¶79, "just insane") is insufficient to impugn all of TTD's public statements about Kokai.

***Data Integration/"Seeding":***  Allegations of lack of "seeding" of healthcare client data rely on one FE who offers no facts at all, one who admits seeding "restrictions" and none who explain or quantify how any issues purportedly "impeded" spend.  MTD 11.  Despite conceding these advertisers made up only 11-12% of spend in 2022 and 2023 (*id.*), Plaintiff argues healthcare seeding was "easily large enough to alone cause TTD's 2024 revenue miss."  Opp. 10 (¶91).  Yet Plaintiff points to ***no particularized facts*** of any tie between purported lack of seeding and revenue, instead relying on counsel's rank speculation that "a slow-down in adoption and spending in that sector had an outsized impact on the Company's overall bottom line."  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (conclusory allegations are "not entitled to the assumption of truth").

The Opposition also drastically mischaracterizes the FAC in asserting "Kokai did not work for political sector customers" and those customers "went

---

[3] No well-pled facts support rhetoric that programmatic guaranteed deals were "one of the most popular types of ad campaigns."  *Id.*

-4-

elsewhere[.]" Opp. 9 (citing ¶93 (unexplained "issues," not attributed to Kokai; those customers "remain[ed] on the legacy Solimar platform" for "the 2024 election cycles")). *See also* MTD 12 (2024 was TTD's "most successful year ever for political ad spend").[4]

*User Interface:* The Opposition alludes to cherry-picked complaints about Kokai's user interface that do not indicate TTD affirmatively gave a material misimpression of its state of affairs. MTD 12; Opp. 11 (no FAC cites); *cf.* ¶70 (alleging *positive* reporting on Kokai in 2024). Aside from two Reddit posts (¶¶113, 115), the FAC's only "customer" appears to be the third-party marketing company director (misleadingly referred to as "***TTD's*** former marketing director," Opp. 11), whose criticism amounts to June 2023 launch experience *five months* pre-class period, and irrelevant personal dislike (¶¶108-109). Plaintiff admits the director alleges no spend reduction connected to the user interface, but states "FEs did." Opp. 11 (¶¶112-114). But those cited paragraphs **say nothing** about reduced client spend.[5] Nor do "twelve FEs" allege the user interface impacted "adoption and spend[.]" Opp. 11 (FAC cites conspicuously missing).

*Pacing:* The FAC's claim of "pacing [spread of money over campaigns] problems" lacks any relevant details like how it purportedly "'hamper[ed]' Kokai adoption," which or how many customers it affected and/or how long any issue lasted. MTD 12-13. The Opposition feigns that "details" are not required—contrary to Rule 9(b) and the PSLRA (Opp. 10 (¶104))—confirming the non-particularized, uncorroborated hearsay should be disregarded.

---

[4] Conclusory arguments that political customers "would have" spent more on Kokai, and that data integration was "critical to Kokai's marketing," can be disregarded as such. Opp. 9-10 & n.9. So too the passing critiques of seeding as, for example, "confusing," and neither customers nor FEs called it "dysfunctional[]" as insinuated. Opp. 9-10 (¶¶94-97).

[5] That the director "hated" Kokai (yet did not reduce spend) does not warrant speculation about TTD's customers globally reducing spend. *Id*. at n.12.

-5-

### b.    Allegations Regarding Kokai Adoption Fail

Defendants demonstrated that the FAC lacks well-pled facts that TTD's adoption timing-related statements during the class period were false or misleading; for example, that adoption was *not* "50%" in November 2024, or a "majority" of clients had *not* moved to Kokai by February 2025, as publicly stated. MTD 13.  The Opposition ***does not dispute*** these points (Opp. 2-3), effectively conceding the FAC makes *no* attempt to show *how* any challenged statement about adoption was false or misleading when made.

The Opposition's silence concedes another key point: mid-class period analyst reports (cited by Plaintiff) described that Kokai was "still early" in its rollout, had not yet reached "general availability" and expectations for majority customer usage and spend were focused on the ***second half of 2025***.  MTD 13-14 (¶40, Exs. 19-21).

With this backdrop, Plaintiff argues Defendants were obligated to disclose "adverse information that cuts against the positive[.]"  Opp. 3.  But a duty to disclose arises only if an omission would make statements misleading (MTD 8-9), and Plaintiff's cases involve easily distinguishable circumstances.  Opp. 3 (citing, *e.g.*, *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 708 (9th Cir. 2016) (FDA communicated concerns to company about drug study while company falsely touted that all data was running in drug's favor).

Plaintiff's argument that Defendants were "required to disclose" that "adoption lagged," was "slower than publicly reported" and customers were reducing spend/switching to competitors relies on the false premise of even adequately alleging these purported issues—which it does not.  Opp. 3.  Its reliance on cases involving *admissions* of negative information contradicting defendants' positive statements is thus inapt.  *Id.* (citing *Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 790 F. Supp. 3d 763, 773, 777 (N.D. Cal. 2025) (touting new business line as "additive" despite tests revealing "significant

-6-

cannibalization" and later admitting same); *Alghazwi*, 2025 WL 2751076, at *3-7, *17 (touting disastrous product launch as "flawless" with later admissions)).

The Opposition's remaining arguments fail as well.

***First,*** Plaintiff claims weekly reports showed "customers were not adopting Kokai." Opp. 3 (¶¶54-55). But the cited FEs simply say the reports described which customers had migrated or not—not that clients were wholesale not adopting Kokai. And two FEs whose clients were "well below 20% usage" in August 2024 (Opp. 3-4 ("18%" and "5-10%")) is unsurprising—Plaintiff's August 2024 analyst reports relayed that Kokai **was not even expected to reach larger adoption until the *second half of 2025***. MTD 13-14. Similarly, that Green was "excited" about Kokai adoption in November 2024 makes complete sense: the FAC admits TTD had achieved 50% adoption *many months ahead of* its goal. Opp. 3-4; ¶212.[6] The Opposition's reference to FE7's research to undermine Green's statement is truly confounding (Opp. 4 (¶45)) since FE7's findings ("60%" adoption) were **consistent with** TTD's alleged representations in November 2024 (around "50%" adoption). MTD 14.

***Second***, claims that "multiple FEs" reported that defects led to "reduced spending" and "switching to competitors" fails. Opp. 4. The only FE who even gets close to suggesting "reduced spending" (*i.e.*, vague "split budgets") is political sector FE12 (¶124), who claims no Kokai "defects" nor avers any decreased revenue as a result. MTD 12; Opp. 5 (conceding FE12 is the only basis for the FAC's "diverted spending" claim).[7] Plaintiff's three internet articles from 2025 opining on TTD and Kokai likewise do not support its inflammatory conclusion

---

[6] That *AdWeek* in 2025 was critical of Kokai (¶137) is not "corroborat[ion]" customers "were not adopting" it, including in 2024. Opp. 4.

[7] *See also* Opp. 4 (citing ¶123 (hearsay that a client did not want to *increase* spend), ¶125 (non-specific allegation FE1 "knew" of clients pulling budgets "off Kokai"; unclear if they remained on TTD's other platform)).

that TTD was "fail[ing] to draw new or convert customers due to … defects" (Opp. 4), nor does that square with TTD meeting its revenue guidance during the class period and, even in missing its Q4'24 guidance, announcing FY24 and Q4'24 revenue up 26% and 22% year-over-year, respectively.  MTD 3.

**Third**, claims of "manipulated" adoption metrics (relying on FE6's uncorroborated, vague assertions) are baseless; the Opposition does not even argue that any publicly reported metrics were inaccurate.  Opp. 4-5; MTD 14.[8] Contending that TTD counted clients as having adopted Kokai "regardless of usage" is further belied by TTD's reporting of the level of gross *spend* through Kokai (the "bulk" in May 2025, "75%" in August 2025), which Plaintiff **does not** allege was false.  MTD 13, 19.  Finally, the marketing company director's "***forced***" migration claim (Plaintiff's emphasis) lacks a concomitant claim that the director's clients did not thereafter *use* Kokai.  Opp. 5 (¶49).[9]

Plaintiff's citation to *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747 (9th Cir. 2023) (Opp. 4) is far afield and ignores that Plaintiff's own FE7 disproved inaccurate reporting.  *Id.* at 756-57, 767-73 (multiple CWs corroborated that salespeople were allegedly pressured by senior management to categorize seven-figure deals as "committed" to create illusory public revenue forecasts, later allegedly missed because deals were illusory). FE5's account that personnel were "encouraged to send clients emails pushing" Kokai adoption (¶49) in no way parallels *Glazer's* "pressure campaign" allegations (Opp. 5), rather than "an extension of [a] company's ordinary strategy for encouraging adoption of its products."  MTD 14.

---

[8] FE6's allegations are not "corroborated" by "***two*** other [FEs]" (Plaintiff's emphasis, citing ¶48); paragraph 48 refers **only** to FE6—no one else.  Opp. 5.

[9] Claims of a "marketing personnel vacuum" fall flat.  *Id.*; *compare also* ¶51 (TTD had "no senior leader in product marketing"), *with id.* (TTD had a Chief Marketing Officer).  Similarly misguided is vague reference to "extra *costs*" of "maintaining two systems" (Opp. 5), not alleged to have impacted *revenue*.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

***Finally***, Plaintiff's argument that Defendants "ignore[d]" portions of challenged statements is erroneous. Opp. 5-6. Plaintiff merely cites Defendants' listing of *timing*-related adoption statements (MTD 13), but the statements Plaintiff identifies (Opp. 6) are addressed by the *plethora* of arguments throughout Defendants' memorandum. In any event, Plaintiff does not explain, for example, how stating the "core of Kokai has been delivered" was misleading when the "bulk" of client spend was through it. *Id*.

Plaintiff also feigns ignorance of how FE7's findings (60% adoption) were "somehow consistent" with TTD's alleged contemporaneous "50%" adoption representation. *Id*. Likely to distract from this inconvenient pleading admission, the Opposition falsely claims FE7 was tasked with determining why Kokai adoption was not "at the pace Defendants were claiming" (*id*.) when the allegation says nothing of the sort. ¶45. Further stumbling, Plaintiff says FE7's findings contradicted "assuring of complete adoption" in 2024 (Opp. 6) which uses the wrong timeframe; Plaintiff's alleged "publicly reported" adoption goal at that time was ***2025*** year-end. ¶212.[10]

### 2.   Puffery Statements Are Not Actionable

The FAC's "vague statements of optimism" and "subjective assessment[s]" are not a "securities violation[.]" MTD 6. Plaintiff does not dispute that analogous statements were dismissed in *Brodsky* ("on the technology front we hit the ball out of the park") and *SunPower* ("well positioned to drive growth and profitability") as puffery. Opp. 17-18 & n.17. Plaintiff's throwaway criticism that clearly relevant Ninth Circuit opinions were too short or cited favorably authority that was too old do not alter their holdings. *Id*. at n.17.[11]

---

[10] Defendants did not "splic[e]" statements with the "potential to mislead." Opp. 6.

[11] Suggesting puffery cannot be decided now (Opp. 15) ignores Defendants' analogous cases.

-9-
DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

Plaintiff instead relies on readily distinguishable instances where particularized, verifiable well-pled facts directly contradicted public statements. Opp. 15 (citing, *e.g.*, *Alghazwi*, 2025 WL 2751076, at *3-6, *11 (unqualified representations about "flawless launch" despite over half of machines returned)). Plaintiff's cases about "driving growth," "comparative" statements and purported knowledge of operations "performing poorly" are likewise distinguishable and did not involve subjective statements as here.  Opp. 15-16 (citing, *e.g.*, *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *5-6, *9-10 (N.D. Cal. Apr. 28, 2020) (marketing products as a "functioning, combined solution" working "seamlessly" together despite knowledge of their failed integration and major customers refusing to pay)).[12]  Nor does Kokai being "important" (*e.g.*, *In re Volkswagen* (lied about having "clean diesel")) or "frequently" discussed (*e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146-47 (9th Cir. 2017)) ("repeated reassurances" of pipeline health) make it analogous to Plaintiff's factually distinct cases.[13]

### 3. Safe Harbor Protection Applies To The Forward-Looking Statements

***First***, Plaintiff's argument that Defendants' forward-looking statements were not "purely forward-looking" (Opp. 13) is a red herring, since Defendants only challenged the *forward-looking portions*.  MTD 7-8.  For example, Plaintiff complains paragraph 220 ("adoption is now ahead of schedule") is not forward-looking, but Defendants rightfully (and clearly) challenged only the portion "[w]e expect all clients to be using it by the end of year[.]"  MTD 7.  Plaintiff offers ***no*** response to why the challenged *portions* are not protected.

***Second***, Plaintiff erroneously argues the safe harbor does not apply to the FAC's purported "omissions."  Opp. 13; *see Golub v. Gigamon, Inc.*, 847 F.

---

[12] That statements were made during investor conferences and to analysts was not dispositive in Plaintiff's cases.  Opp. 16.

[13] Knowledge of "material adverse facts" (Opp. 17) are not present here.

-10-

App'x. 368, 373 (9th Cir. 2021) (statements allegedly rendered misleading by omission were "entirely forward-looking" so "bar[red]" by safe harbor).  Plaintiff's decision (*In re Celera Corp.*) merely concluded a statement "was not forward-looking" and "omitted …historical fact" that rendered it misleading.  Here, none of Defendants' forward-looking statements omitted a "fact" that rendered them misleading in any event (*see also* Opp. 14 n.16).[14]

*Finally*, Plaintiff's inapt authorities fail to undermine TTD's meaningful cautionary language.  Opp. 14 (citing, *e.g.*, *Quality Sys.*, 865 F.3d at 1148-49 (only "outright admission" of falsity would have been sufficiently cautionary for knowingly false statements)).  And lack of warnings about "existing problems with Kokai," made "after" Defendants knew of them, rest on the flawed premise that Plaintiff has adequately pled such knowledge.  Plaintiff's cases illustrate the difference.  *Id*. (citing, *e.g.*, *Glazer*, 63 F.4th at 780 (generic risk factor that transaction might not close omitted knowledge merger partner was reconsidering)).

### 4.    Opinion Statements Are Not Actionable

Opinion statements are generally—and here—"not actionable."  MTD 15-16.  In response, Plaintiff offers no explanation for how the opinions were purportedly "a fact[.]"  Opp. 18.  Nor does it point to "particular (and material) facts" going to the basis for the opinion to show they did not "fairly align[] with the information in [Defendants'] possession" to be misleading.  *Id*.[15]  Plaintiff's repetition of generic, unsupported allegations (*e.g.*, TTD "manipulat[ed] adoption figures") to undermine Green's opinions about Kokai and its adoption (¶¶177-178; 183(a); 204-205) is insufficient.  Opp. 19.  Nor do conclusory allegations about

---

[14] The Opposition misleadingly argues Defendants omitted in November 2023, for example, "a pressure campaign" and "shifted spend" to competitors, relying on alleged events beginning *long after* November 2023.  Opp. 13-14 (*e.g.*, ¶¶48-50).

[15] Plaintiff's case (Opp. 19 n.18 (touting opinions on medical device's safety despite reports of serious injuries)) finds no commonality here.

performance metrics (*e.g.*, "untrusted by customers") and data integration ("frustrating limitations") (*id*. (¶183(b))) go to Green's basis for his optimistic opinion of Kokai's future.  And remaining opinions about Kokai (¶¶210-211, *e.g.*, "best [product]") are not rendered misleading by omission of, for example, FE7's confirmation of accurately reported adoption numbers.  Opp. 19 (¶45).

### 5.    Additional Reasons Warrant Dismissal

Plaintiff's silence concedes that analyst reports after TTD's Q2'24 earnings call, describing Kokai as *early* in its rollout, moot allegations that "positive representations" about adoption were misleading.  MTD 17.  And the Opposition ironically dismisses the "success story" discussed on the call (after FE2 "could not find" any) (MTD 22) as discussing "success generically," though that is exactly what FE2 claims was sought.  Opp. 12 n.14; ¶82.  The Opposition tries to resuscitate FE1's opinion about ***"incremental reach"*** by noting that campaign results may differ (Opp. 12), which still offers no reliable or plausible explanation why the number of new customers reached cannot be analyzed at an aggregate level.[16]  Plaintiff concedes the *sole* basis for alleging ***"cost per acquisition"*** was manipulated is FE5's vague assertion that a "proper A/B test set up" was not done (Opp. 11-12 (citing only FE5 (¶102))), yet fails to point to explanatory, coherent details or distinguish Defendants' cases.  MTD 17-18.

Plaintiff takes issue with Kokai being expected on TTD's Q3'24 call to reach 90% adoption by 2025-end, yet admits 75% of spend was through Kokai by August 2025.  MTD 18.  Plaintiff's effort to distinguish *In re Siebel Systems* (at *2-6) (adoption goal not pled false) by arguing that those plaintiffs made "no allegation" of knowledge of inaccurate projections is wrong; they did, similar to here (*e.g.*, product was "riddled with defects" and not being adopted by customers), which the court rejected.  Opp. 4 n.2.

---

[16] Defendants did not argue "senior officer" allegations are required.  Opp. 12-13; *see* MTD 17.

Plaintiff also largely ignores Defendants' remaining arguments as to specific statements. *See* MTD 14-19 (*e.g.*, that a "new way to understand and score" relevance is not inconsistent with FE1's account, no well-pled facts show a "majority of" clients had *not* moved to Kokai as of Q4'24, etc.).

## B. The FAC Pleads No Strong Inference Of Scienter

### 1. The Former Employees Do Not Support Scienter

Plaintiff's FEs lack "reliability and personal knowledge," and their statements are "themselves [not] indicative of scienter." MTD 19-24. Significantly, no FE reported to any Individual Defendant (the vast majority suggest they were separated by *multiple* reporting lines) or attended an individual meeting or personally had a conversation with any of them. MTD 20 (citing case). Tellingly, the Opposition responds that "numerous" FEs "attended meetings with Defendants," but cites only "all-hands meetings[.]" Opp. 25 (¶¶58-61 (all-hands)).

Plaintiff tacitly admits the FAC depends on hearsay, yet it seeks comfort in easily distinguishable cases involving *direct* communications with defendants and *detailed* allegations of their knowledge of *significant problems*. *Id.* (citing, *e.g.*, *Roberts*, 2020 WL 2042244, at \*11 (CW observed email with defendant regarding major customer's refusal to pay due to integration problems and received briefings of weekly calls with defendants regarding same)).[17]

Further, no FEs are from TTD's finance department to indicate knowledge of revenue problems, let alone due to Kokai. MTD 20 (citing case: no scienter without allegations about financial guidance).[18] Plaintiff relies solely on *Berson v.*

---

[17] Plaintiff's off-the-mark attempt to distinguish Defendants' authorities fails. Opp. 25 n.22 & n.24 (*McGovney* at \*19 (CWs who did not report to or have personal contact with defendants unreliable, independent of tenures); *GitLab* at \*10, \*14 (rejecting *more* than "kept in the loop" allegation); *Downey* at \*9-10 (rejecting allegations for host of reasons, including CWs' reports of *others'* communications with defendant were unreliable)).

[18] Suggesting that FEs "would reasonably have been exposed to" this information (Opp. 26) is inapt as no FE was allegedly so situated.

-13-

*Applied Signal Technology, Inc.* to excuse its lack of relevant allegations (Opp. 25-26), but there plaintiffs alleged with particularity that stop-work orders put 80% of the company's revenues at risk, a "devastating" impact the court found must have been known to defendants.  527 F.3d 982, 984, 987-88 (9th Cir. 2008).  Plaintiff also speculates that surely there "would" have been a negative impact on revenue from Kokai defects (Opp. 26), but it does not—and cannot—point to any FAC allegation that there *was* (let alone significant).

Plaintiff's remaining arguments fail.

***First***, Plaintiff argues it raised a strong inference of scienter in the "most direct way," by pointing to "data, available to the party, which contradict the statement."  Opp. 20.  Plaintiff cites Defendants' "access to" Tableau reports and social media (*id*. (¶¶52-57, 120, 257)), but neither "contradicted" TTD's public statements.  The cited "weekly updates" allegedly merely showed which customers moved to Kokai and which did not (¶53).  And, if awareness of social media criticism of products established scienter (¶¶120, 257 ("critiques of Kokai[]")), scienter would be omnipresent.[19]  Plaintiff's reliance on FE7's "report," that confirmed the accuracy of alleged adoption statements, is the ***opposite*** of data "contradict[ing]" them.  Opp. 20.

Plaintiff unsurprisingly relies on inapt authorities.  *Id*. (citing, *e.g.*, *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (CWs across regions alleged "hard numbers" and confirmed a "major slowdown" before missed guidance); *Quality Sys.*, 865 F.3d at 1145 (CWs alleged defendants' access to "real time" reports of sales decline due to saturated pipeline while touting pipeline)).

***Second***, Plaintiff argues Defendants "attended internal meetings where Kokai's lagging adoption and defects were discussed."  Opp. 21 (¶¶58-61, 247-

---

[19] FE3 alleges the reports revealed vague, innocuous "KPI changes"—***not*** "deficiencies."  Opp. 25 n.23 (¶81).

-14-

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-cv-01396-CAS-DFM

249).  But Plaintiff refers merely to all-hands meetings (¶¶58-59, 247-249).  *See* MTD 21 (citing case: "unlikely" defendants make statements indicative of fraud at company-wide meetings).  The remaining cites just refer to *hearsay* that "adoption" *generally* was discussed with Green and the SVP's view of the adoption rate.  ¶¶60-61.[20]

**Third**, Plaintiff misleadingly asserts Defendants ignored the FEs' "actual accounts" that Defendants knew "but kept from investors" that adoption of Kokai "was not as represented."  Opp. 24 (citing ¶54 ("weekly spreadsheets" showed migration), ¶55 (review in all-hands), ¶59 (adoption was discussed in all-hands)).  None of these allegations comes even close to alleging knowledge of false numbers reported to investors.  Rather, FE7 who speaks to a then-currently represented percentage of adoption, **confirmed** its accuracy.  MTD 14.[21]

**Fourth**, Plaintiff argues FE1 describes it was "directly communicated to" Green that relevance was "unreliable and unstable."  Opp. 26.  This misstates the actual allegation (*supra* at 2-3), and, in any event, fails to show Green's awareness of problems so significant, or even ripe, to render any statement false or misleading.  And Plaintiff leaves uncontested that *no one* corroborates the allegation.  MTD 10; *cf. Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 (9th Cir. 2019) (hearsay credited where CW compiled report of stale alerts and defendant admitted involvement in problems (Opp. 26)).

Plaintiff sidesteps pleading details of the SVP's alleged statement to FE4 that adoption was "slower than" TTD was "publicly projecting" (which the Opposition misleadingly refers to as "publicly reporting"), merely arguing the SVP

[20] Plaintiff's cited cases involve far more detailed and specific allegations.  Opp. 21.  And support for "numerous clients complaining about defects" is merely *AdWeek* purportedly interviewing just nine "ad buyers," some of whom *favored* TTD.  *Id.* (citing ¶¶58-61 (no client allegations), ¶¶136-41 (*AdWeek*)); MTD 29.

[21] Alleged review of innocuous Tableau information is not the "high level of detail" needed even under *South Ferry*.  Opp. 24 n.21.

-15-

"repeatedly" discussed "slow adoption" with Green. Opp. 26 (¶111). But paragraph 111 says *nothing* about adoption. Plaintiff's strawman argument that Defendants' "suggestion" that FE4 and the SVP were "lying," which "cannot be accepted at this stage," distracts from the fact that FE4's allegations *as pled* do not support scienter.

### 2.    Individual Defendant Stock Sales Do Not Support Scienter

The Opposition does not contest Green and Schenkein's class period sales amounts, which fall far short of what the Ninth Circuit typically requires, or that Jacobson's class period trades cannot be adequately pled "suspicious." MTD 25-26.[22] Moreover, scienter is *undermined* because Schenkein and Jacobson held more stock at the end of the class period than at the beginning,[23] and most sales were pursuant to 10b5-1 plans. MTD 26.

While Plaintiff argues that the timing of Green's February 11, 2025 sale was "just *one day* before TTD's then-largest single-day market cap drop" (Opp. 22 (Plaintiff's emphasis)), Defendants addressed this: those sales "were pursuant to a 10b5-1 plan adopted" months prior "on 'September 12, 2024,'" when analysts were reporting that not even half of spend was through Kokai and it had not reached "general availability[.]" MTD 26.

Plaintiff's "dollar proceeds" authority is readily distinguishable as the defendant there sold (outside of a plan) more than double Green's stock value, despite selling *no* shares in the preceding five years, and his later "admissions" suggested he sold while knowing the company would soon miss its projections. Opp. 27 (citing *Oracle*, 380 F.3d at 1232-33).

---

[22] Plaintiff misunderstands that Defendants argued the sales—*as a percentage of overall holdings*—are insufficiently large as instructed by controlling authority. Opp. 26.

[23] Plaintiff's case (*In re Questcor* at *20 (Opp. 27)) with "dramatically inconsistent" class period trading does not require a different result here.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

Arguing the 10b5-1 plans were implemented "during the [c]lass [p]eriod" requires sufficiently particularized MNPI absent here. MTD 26-27; Opp. 27 (citing ¶¶163-166 (confirming same)). Green's 10b5-1 plan amendment just once *before* the class period (¶153) is unlike *In re Countrywide* (Opp. 27), where the defendant "*actively*" amended and modified his plan "at the height of the market" to increase sales to 580,000 shares/month.[24]

### 3.    Plaintiff's Remaining Scienter Allegations Fail

***Purported "Admission":*** The Opposition retreats from the allegation that Defendants "admitted" on February 12, 2025 that Kokai's adoption was "slower than publicly stated" (MTD 27 (¶246)), re-labeling it (purportedly) "slower-than-expected" (Opp. 1), which underscores the unreliability of the FAC's scienter claims.

***Kokai's "Importance":*** Plaintiff argues it would be "absurd" for management to not know about Kokai's "adoption and capabilities" (Opp. 22-23, 27-28), but what Plaintiff actually seeks to presume their knowledge of are "defects" and non-adoption, which no well-pled facts support. Plaintiff's cases presumed knowledge under the core operations doctrine based on well-pled major threats to revenue and admitted problems inapposite here. Opp. 27-28 (citing, *e.g.*, *Berson*, 527 F.3d 982, 984, 988 (80% of company's revenues at risk); *Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at *1-3 (9th Cir. Dec. 20, 2024) (presuming knowledge "a majority of" advertisers had *not* successfully implemented transition given it "threatened more than half" of company's revenue and CWs alleged "very few adoptees")).

***Schenkein's Departure:*** Plaintiff merely emphasizes that Schenkein's departure announcement on August 7, 2025 was "***on the same day***" (Plaintiff's

---

[24] Nor is *City of Birmingham* (Opp. 27) analogous (plausible allegations defendants misled investors about likelihood of drug's approval; "substantial" class period sales and none before (at *11-13)).

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

emphasis) as when TTD purportedly "disclosed that Kokai was not fully adopted" (Opp. 23), which makes no sense. Full adoption was then expected by the *end of 2025* (*e.g.*, ¶212), and TTD announced positive news: "75%" of client spend was through Kokai (¶267).[25] Plaintiff's cases involved resignations accompanying a financial restatement, tone at the top issues and manipulating data given to the FDA, inapposite here. Opp. 23. Plaintiff does not address that Schenkein "remain[ing] as a senior advisor through" 2025 negates scienter. MTD 4, 27.

***Opposition's Remaining Arguments:*** Scienter is not raised merely by speaking with analysts. Opp. 21 (citing cases in which defendants denied well-pled issues related to enforcement actions and admissions). Nor does Green "follow[ing]" Kokai confer scienter. Opp. 22 (citing case involving alleged knowledge of price-fixing). Plaintiff's reliance on *Brown v. China Integrated Energy, Inc.* (Opp. 23-24) to argue that "evidence of concealment" of adoption numbers supports scienter bears absolutely no resemblance here, where a company's purported biodiesel production was "a complete hoax" and its only activity was on the day of "show" to make it appear functioning.

**C.    The FAC Does Not Plead Loss Causation**

Plaintiff's suggestion that loss causation is a matter for "trial" (Opp. 28) ignores Defendants' analogous cases holding it inadequately pled, as here.

***February 12, 2025:*** TTD's missed guidance is insufficient for loss causation. MTD 28-29. Plaintiff agrees the disclosure did not admit fraud but repeats its conclusory allegation that the miss was due to the FAC's allegations about defects impeding adoption. This is insufficient to plausibly allege loss caused by a material misrepresentation. Opp. 28-29.

***March 11, 2025:*** *AdWeek* merely mentioned that Kokai did not support certain types of deals and certain anonymous individuals did not prefer the user

---

[25] For the same reasons, Plaintiff fails to meaningfully distinguish Defendants' cases. Opp. 23 n.20.

-18-

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-cv-01396-CAS-DFM

interface.  MTD 29 (citing *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017) ("customer complaints" do not plead loss causation)).  Plaintiff also ignores that the article's content was stale, rendering moot its attempt to distinguish *Curry.  In re Tesla* is easily distinguishable, as the article included an interview with the defendant along with clarification of the preliminary nature of funding for a previously-announced going-private transaction and related SEC investigation. Opp. 29.

***August 7, 2025:***  Conclusory allegations of "concern" that TTD's growth rate had slowed "as a result of poor Kokai adoption" do not suffice; even Plaintiff's analysts cited increasing competition and industry risks.  MTD 29-30 (*Brodsky*, 592 F. Supp. 2d at 1206-07 (earnings deceleration insufficient for loss causation)).  Plaintiff's cited cases about "confounding factors" (Opp. 29-30) are misplaced absent adequately pleading that fraud played *any* role.

Plaintiff's sole authority as to Schenkein's departure—not allegedly related to any wrongdoing—is readily distinguishable.[26]  And the CEO's departure in *Berkeley Lights* (at *2, *17-18) *was* announced with missed projections (contradicting Opp. 30).

## III.   THE REMAINING CLAIMS FAIL

No Individual Defendant can be liable for statements they did not allegedly make, nor for TTD's June 3, 2024 video.  MTD 30 & n.18; Opp. 30 (undisputed). The Section 20(a) and 20A claims fail (MTD 30) (with the Opposition pointing to no well-pled, non-conclusory allegations of MNPI for 20A, and relying on a case involving non-conclusory allegations of knowledge).  Opp. 30.

## IV.   CONCLUSION

Defendants respectfully request the Court dismiss the FAC.

---

[26] Opp. 29 (*Polycom* at 983, 985) (audit committee announced irregularities in defendant's expense submissions; defendant "accepted responsibility" and resigned)).

-19-

Dated:  January 26, 2026

WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation

By: _____/s/ *Caz Hashemi*_____
Caz Hashemi

*Attorneys for Defendants The Trade Desk,
Inc., Jeffrey Terry Green, Laura Schenkein
and Samantha Jacobson*

-20-
DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants The Trade Desk, Inc., Jeffrey Terry Green, Laura Schenkein and Samantha Jacobson, certifies that this brief contains 5,700 words, which complies with the word limit set by Court order dated October 9, 2025 (ECF No. 79).

/s/ *Caz Hashemi*
Caz Hashemi

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:25-CV-01396-CAS-DFM