**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi, and Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Laura H. Posner (*pro hac vice*)
lposner@cohenmilstein.com
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 220-2925

*Counsel for Lead Plaintiff Arkansas Public Employees' Retirement System, and Lead Counsel for the Class*

[Additional counsel in signature block]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re The Trade Desk, Inc. Securities Litigation* | Case No. 2:25-cv-01396-CAS-DFM<br><br>**STIPULATED ORDER ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI") AND PRIVILEGE LOGS**<br><br>Magistrate Judge: Douglas F. McCormick |

# TABLE OF CONTENTS

**Page**


I. PURPOSE ....................................................................1

II. COOPERATION ..........................................................2

III. DEFINITIONS ...........................................................2

IV. SEARCH......................................................................2

A. Search Methodology.......................................................2

V. PRIORITIZATION AND DISCLOSURES OF CUSTODIAL AND NON-CUSTODIAL SOURCES ..........3

VI. PRODUCTION............................................................4

A. Each Production Will Have Four Main Components.................4

B. Production of Hard-Copy Documents.................................4

C. Production of Documents ...............................................5

D. Production of Databases and Other Structured Data.............10

E. Production of Transcripts ...............................................10

F. Processing of Third-Party Documents ................................10

G. Miscellaneous Provisions ...............................................11

VII. ASSERTIONS OF PRIVILEGE .......................................12

VIII. MODIFICATION .......................................................14

A. Modification by Agreement ...........................................14

B. Modification by Court Order..........................................14

1. Pursuant to the agreement reached between Lead Plaintiff and Defendants herein, this Court adopts and orders the following Protocol relating to the Production of Documents and Electronically Stored Information ("ESI")[1] in this Action. "Lead Plaintiff" shall mean Court-appointed Lead Plaintiff Arkansas Public Employees' Retirement System and Public Employees' Retirement System of Mississippi. "Defendants" shall mean The Trade Desk, Inc. ("The Trade Desk"), Jeff Green, Laura Schenkein, and Samantha Jacobson ("Executive Defendants," and together with The Trade Desk, collectively, "Defendants"). Lead Plaintiff and Defendants are collectively referred to as the "Parties." The failure of this Protocol to address any issue is without prejudice to any position that a Party may take on that issue.

## I. PURPOSE

2. This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") will govern the Production of Documents by the Parties in the above-captioned litigation and will serve as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. Notwithstanding anything else herein, this ESI Protocol does not require any Party to search for or produce any ESI or Documents that are subject to an objection.

[1] For the avoidance of doubt, "ESI" shall be interpreted consistent with Federal Rule of Civil Procedure 34 and the Central District of California's Civil Local Rules, and includes, without limitation, information in electronic messaging and collaboration tools and systems, including originals and nonidentical copies that are reasonably accessible and stored on servers, endpoints, mobile devices, removable media, and cloud services. Systems covered by this definition include Slack, Zoom Team Chat/Zoom Chat, Google Chat, Jabber, Webex Teams/Messaging, Apple Messages (iMessage, SMS, MMS), WhatsApp, Signal, Telegram, Discord, any other text messaging systems, any other internal electronic communication systems, and any other cross-platform messaging tools used for business purposes. For the further avoidance of doubt, the enumeration of types of ESI in this footnote does not establish or imply that production of any such ESI is warranted in this Action.

3. The ESI Protocol shall be attached to any subpoena issued to any non-party in this Action.

## II. COOPERATION

4. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with Federal Rules of Civil Procedure and this Court's Local Rules. Should any party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

## III. DEFINITIONS

5. "Action" means this litigation, *In re The Trade Desk, Inc. Securities Litigation*, Case No. 2:25-cv-01396-CAS-DFM.

6. "Document(s)" means documents, tangible things, and electronically stored information, as defined by Federal Rule of Civil Procedure 34(a)(1)(A).

7. "Hard-Copy Documents" means Documents that existed in physical paper format prior to production.

8. "Issuing Party" means any Party (defined below) that issues a non-party subpoena.

9. "Producing Party" means the Party producing the Documents.

10. "Requesting Party" means the Party requesting the Documents.

## IV. SEARCH

### A. Search Methodology

11. The Parties agree to meet and confer and use their reasonable best efforts to reach agreement regarding search methodology to be applied, including, but not limited to, search terms, date restrictions, and Technology Assisted Review ("TAR"). Should either side desire to leverage TAR or Continuous Active Learning ("CAL") to limit review and production, the Parties agree to meet and confer before any search methodology is implemented or any key words are discussed, to

determine whether TAR or CAL is appropriate in this Action, and if so, possible methods of employing TAR or CAL to assist in the identification, review, and production of Documents that are subject to production and the filtering out of Documents that are not subject to discovery. If, following the aforementioned meet and confer process, it is agreed that a Party will proceed with the use of TAR or CAL, that Party shall draft a separate protocol detailing the planned use of TAR or CAL which will be subject to further meet and confer before being executed. *See* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* Principle 6, 19 SEDONA CONF. J. 1, 118 (2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.").

12. The Parties will meet and confer regarding document sources, including but not limited to Tableau, which a Producing Party reasonably believes may be responsive to discovery requests and not subject to objections, and for which text-based search technologies are technically ineffective.

## V. PRIORITIZATION AND DISCLOSURES OF CUSTODIAL AND NON-CUSTODIAL SOURCES

13. The Parties will each provide their own proposed custodian lists of all custodians to be used for the search of custodial ESI. The Parties shall meet and confer in good faith to reach agreement on each Party's custodian list. Each Party shall conduct a reasonable search for responsive documents, including from (a) agreed-upon custodial sources and (b) non-custodial sources. Subject to the limitations on discovery imposed by the Court, the Parties retain the right, upon reviewing the production of documents and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched for, and will meet and confer regarding such requests.

14. When a Party propounds discovery requests pursuant to Federal Rule of Civil Procedure 34, the Parties shall meet and confer to discuss whether certain categories of information can be prioritized over other categories. Documents will be produced on a rolling basis.

## VI. PRODUCTION

### A. Each Production Will Have Four Main Components

15. A directory titled "images" containing images of every page of every Document in the production will be Bates-numbered sequentially. Slipsheets may be included instead of images for documents produced in native format.

16. A directory titled "natives" containing Native Files for a subset of the Documents, as described below, each file named with the Bates number of the first page of the Document, and with the same extension as the original Native File type of the Document.

17. A directory titled "text" containing searchable OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

18. A directory titled "data" containing image and metadata Load Files that contain the Bates ranges and Metadata for each Document.

### B. Production of Hard-Copy Documents

19. Documents maintained in a Party's ordinary course of business as Hard-Copy Documents should be scanned in a manner so as to retain the original organization of the Hard-Copy Documents. Hard-Copy Documents should be scanned as PDF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). Hard-Copy Documents should be physically unitized. Hard-Copy Documents shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately

formatted searchable text file (.txt) that is named to match the first bates number of the document.

20. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the Document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned first as the Document was stored in the ordinary course of business, and then separately.

**C. Production of Documents**

21. The Parties agree to produce in the formats described below. If any Party contends that Documents warrant a different format, the Parties will meet and confer to determine a mutually acceptable production for such Documents.

22. **Image Format**. Single-page TIFFs shall be provided for each Document, with each TIFF named after the beginning production number of that Document. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) shall be burned into each image. Image files shall be provided in an "Images" folder. The images may be black and white except as required by Paragraph 26(c) below. Upon a showing of good cause, a Requesting Party may request that certain documents be re-produced with the coloration of the original document. Upon such a request, should the Producing Party object to it, the Parties will meet and confer.

23. **Extracted Text Files**. For native files containing embedded text and no information requiring redactions, the full text of native files shall be extracted directly from the native file (not OCR) and shall be delivered in an appropriately formatted searchable text file (.txt) that is named to match the first bates number of the Document. Text files shall be provided in a "Text" folder. To the extent that a Document is redacted, the Document shall undergo OCR after the text has been redacted to remove redacted text.

24. **Unique IDs**. Each Document shall have a unique filename, which corresponds to the first Bates number of the Document. The filename shall not contain any blank spaces and shall be consistently zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced. If a Bates number, or set of Bates numbers, is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all Documents a Party produces in the litigation.

25. **Parent-Child Relationship**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent Document shall be preserved. Absent a claim of privilege, the child-document shall be consecutively produced immediately after the parent-document. Each Document shall be produced with the production number for the first and last page of that Document in the "Begin Bates" and "End Bates" fields of the data load file, and with the "BeginFamily" and "EndFamily" fields listing the production number for the first and last page in the Document family. A Document and all other Documents in its attachment range, e-mails with attachments, and files with extracted embedded OLE Documents all constitute family groups.

26. **Native Format**:

a) All Documents produced in native format shall include the relative file path of the native files in the document production in the "NativePath" metadata field. All native files produced in lieu of images shall be produced in the manner set forth below in subsection (f).

b) Spreadsheets (.XLS, .XLSM, or similar file formats) shall be produced in native format, with the exception that any spreadsheet that requires redaction may be produced either as a TIFF image provided that the unredacted information is viewable or in redacted native form.

c) Presentation files (.PPT or .PPTX) shall be provided in native format, with the exception that any presentation file that requires redaction may be produced as a color TIFF image provided that the unredacted information is viewable.

d) Video or audio files may be provided in native format.

e) Documents containing tracked changes, comments, or hidden text or content must be processed to show readily available tracked changes, comments, or hidden text or content, or alternatively such content must be viewable in native format.

f) Where native files are produced in lieu of images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

g) Request for Native Files. Other than as specifically set forth above, a Producing Party need not produce Documents in native format. If good cause exists for the Requesting Party to request production of certain Documents in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of Documents it requests to be produced in native format or the category of Documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such Documents in native format. The Parties shall meet and confer about such requests. For any request that is denied, the Producing Party shall provide an explanation for the reason or reasons for denying such request. The Producing Party shall produce an overlay to ensure

that the "NativePath" entry in the data load file indicates the relative file path to each Native File in such production, and all extracted text and applicable metadata fields.

27. **Password-Protected, Encrypted, or Proprietary-Software Files.** With respect to any ESI items that are password-protected or encrypted within the scope of review, the Producing Party will take reasonable vendor automated steps to obtain identified passwords and remove such protection so that the documents can be reviewed and produced if appropriate. ESI that is likely to contain responsive information that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a Requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

28. **Hyperlinked Documents.** The Producing Party will take reasonable vendor automated steps to obtain and produce all Hyperlinked Documents in responsive Documents together with the corresponding responsive Document. In the event that Hyperlinked Documents in a responsive Document cannot be obtained and produced through vendor automated steps, the Producing Party will conduct a reasonable search for Hyperlinked Documents (after identification by the Requesting Party by Bates number) that are within the Producing Party's custody, possession, or control and inside a responsive Document in the Producing Party's document production (including hyperlinks inside emails).

29. **Embedded Documents**. Embedded Documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records, and related back to the respective top level parent Document (*e.g.*, standalone file, email message, etc.) via the "BeginFamily" and "EndFamily" fields referenced in Appendix 1. Related Documents will be produced within a continuous Bates range.

30. **Data Load Files**. Documents shall be provided with an Opticon image .OPT load file and metadata .DAT load file using standard delimiters:

a) Field Separator: ASCII character 20 ("¶");

b) Quote: ASCII character 254 ("þ"); and

c) New Line: ASCII character 174 ("®").

31. **Metadata**. Appendix 1 sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular Document. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any Party to extract, capture, collect, or produce such data.

32. **Deduplication**. Exact duplicate Documents may be deduplicated (based on MD5 or SHA1 hash values[2]) at the family-group level provided that the Producing Party identifies the additional custodians in the "All Custodians" field, and the file paths of all duplicates provided in the "All Paths" field. Attachments shall not be eliminated as duplicates for purposes of production, unless all Documents within a family, such as the parent e-mail and all attachments, are also exact duplicates.

33. **Email Threading.** The Parties are permitted to use commercially reasonable email threading tools to remove emails and their attachments where the contents of the email and any attachments are wholly included within another email that is not removed.

34. **Chat and Collaboration Messages**. Chat/collaboration data (*e.g.*, Slack, Microsoft Teams, Zoom Chat, Google Chat, Webex, Jabber) and text messages (*e.g.*, SMS, iMessage) shall be produced in a searchable format that preserves the presentational features of the original message (*e.g.*, emojis, images, and video files), to the extent reasonably feasible, and shall be produced with its relevant conversation thread broken down by 24-hour increments; provided, however, that a Requesting Party may make a reasonable request for a longer or

[2] Documents shall be considered exact duplicates of each other if they have the same content hash value or are determined to be exact copies of each other by another reliable automated technological method.

otherwise different context window for a particular conversation thread by written notice to the Producing Party. The Producing Party will meet and confer with the Requesting Party regarding such a request. To the extent reasonably feasible, where a conversation or thread spans multiple 24-hour increments, the Producing Party shall maintain replies in the same 24-hour increment as the increment where the initial message was sent. To the extent a Requesting Party reasonably believes that an electronic message was not produced in a format that preserved material presentation features of the original message, the Requesting Party shall identify the message by Bates number, and the Producing Party will meet and confer with the Requesting Party.

**D. Production of Databases and Other Structured Data**

35. If the Producing Party learns after reasonable investigation that a database or other source of structured data contains responsive information, the Producing Party shall alert the Requesting Party to its existence, and the Parties shall meet and confer to determine how such data can be produced in a mutually agreeable format for producing the database or other structured data.

**E. Production of Transcripts**

36. If the Producing Party learns after reasonable investigation that deposition or other transcripts are responsive and not subject to objections, the Producing Party shall alert the Requesting Party to their existence, and the Parties shall meet and confer to determine a mutually agreeable format for producing the transcripts.

**F. Processing of Third-Party Documents**

37. A Party that issues a non-party subpoena shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce Documents in accordance with the specifications set forth herein.

38. The Issuing Party may request that the non-party simultaneously produce Documents to the Issuing Party and all other Parties. If the non-party

produces Documents only to the Issuing Party, productions by a non-party shall be produced by the Issuing Party to all other Parties within seven days.

**G. Miscellaneous Provisions**

39. The following specifications govern the production of all Documents regardless of source, unless otherwise noted in the ESI Protocol:

40. **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. If there is more than one custodian all sources shall likewise be identified in the "All Custodians" field. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back up, hard drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility, so long as no additional metadata need be manually added to make such an identification. A Producing Party shall use a uniform description of a particular custodian across productions.

41. **Foreign Language**. Foreign language text files and metadata shall be delivered with the correct encoding to enable the preservation of the Documents' original language.

42. **Dates**. All Documents shall be processed to show the date and time in Coordinated Universal Time ("UTC"). Dates and times must be concatenated into a single field, with a format of MM/DD/YYYY HH/MM/SS, and must be consistent within any one field. Date delimiters, such as slashes and colons, must be consistent across all fields.

43. **Production Media**. The preferred means of producing Documents is via secure FTP or secure file share. However, Documents may also be provided via CD, DVD, flash drive, or hard drive. To the extent possible, physical media shall be write-protected before it is produced.

44. **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced shall be combined into a compressed file such as .zip, .rar, etc. If the production is made using physical media, the media shall be labeled to include (a) text referencing that it was produced in *In re The Trade Desk, Inc. Securities Litigation*, Case No. 2:25-cv-01396-CAS-DFM; (b) the Bates number range of the materials contained on the media; (c) the filename(s) of the compressed file(s); and (d) the date of production.

45. **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the "Begin Bates" and "End Bates" of the Documents being replaced. The name of the document production shall indicate that it is a replacement production. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

46. **Encrypted Data**. Each production will be encrypted before it is produced and the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data in a correspondence separate from the email containing the production.

47. **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of Documents.

48. **Protective Order**. All productions are subject to the Protective Order and any subsequent amendments or addenda or orders entered by the Court in this Action.

## VII. ASSERTIONS OF PRIVILEGE

49. Privilege logs shall be provided in Excel format. Defendants will provide privilege logs for documents withheld from the Individual Defendants,

Tableau, and Salesforce within 45 days of substantial completion of production of documents from the Individual Defendants, Tableau, and Salesforce. Defendants will provide privilege logs for documents withheld from other document sources within 45 days after substantial completion of document production. Lead Plaintiff will provide privilege logs for their document productions 45 days before their deadline to file their class certification motion. Privilege logs will contain the following information: (i) a unique document identifier; (ii) date (for emails, the sent date; for other documents, the dates it was created and last modified); (iii) sender/author(s); (iv) recipient(s) and copy/bcc recipients, where applicable; (v) custodian(s); (vi) file name, or subject line, to the extent not privileged, and file extension (for ESI); (vii) basis for withholding (e.g., attorney-client privilege, work product); and (viii) a description sufficient to assess the claim without revealing privileged content. A Party shall identify whose advice is being sought, provided, or reflected, or whose work product is included, by the attorney's name (if reasonably available), title, and law firm or legal department.

50. For threaded emails, a Party is not required to itemize every attorney appearing on inclusive emails. Non-inclusive emails that are wholly contained within an inclusive produced thread need not be logged separately.

51. Documents shall be logged at the family level. A Requesting Party may request that a reasonable number of entries be logged at the document level. If the Producing Party objects, the Parties will meet and confer.

52. Privileged Documents that were created by, sent to, or received by an attorney and were created after commencement of this Action or any lawsuits consolidated in or related to this Action need not be placed on a privilege log. Only documents withheld as privileged must be placed on a privilege log (*i.e.*, documents redacted as partially privileged need not be placed on a privilege log).

53. Redacted documents need not be placed on a privilege log so long as the following information is either reasonably identifiable from the non-redacted

information on the face of the redacted document, provided in the black box on the redacted document, or included in the document's metadata: (i) date (for emails, the sent date; for other documents, the dates it was created and last modified); (ii) sender/author(s); (iii) recipient(s) and copy/bcc recipients, where applicable; (iv) custodian(s); (v) file name, or subject line, to the extent not privileged, and file extension (for ESI); (vi) basis for withholding (e.g., attorney-client privilege, work product); (vii) context or information sufficient to assess the claim without revealing privileged content; and (viii) the attorney's name (if reasonably available), title, law firm or legal department for the individual whose advice is being sought, provided, or reflected, or whose work product is included on the redacted document. If the Requesting Party contends that the foregoing information is not reasonably identifiable for particular documents identified by Bates number, the Parties will meet and confer and the Producing Party may provide a redaction log for such documents.

## VIII. MODIFICATION

### A. Modification by Agreement

54. Any practice or procedure set forth herein may be varied by agreement between the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents. Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

### B. Modification by Court Order

55. Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying the terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

Dated: August 31, 2026

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Jonathan D. Uslaner
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3481

-and-

Hannah Ross (*pro hac vice*)
hannah@blbglaw.com
John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
Prachi Patel (*pro hac vice*)
prachi.patel@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400

*Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi, and Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Laura H. Posner (*pro hac vice*)
lposner@cohenmilstein.com
88 Pine St., 14th Floor
New York, NY 10005
Tel.: (212) 838-7797

-and-

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com)

Molly J. Bowen (*pro hac vice*)
mbowen@cohenmilstein.com
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel.: (202) 408-4600

*Counsel for Lead Plaintiff Arkansas Public Employees' Retirement System, and Lead Counsel for the Class*

**DAVIDSON, PLLC**

John L. Davidson (*pro hac vice*)
jdavidson@dbslawfirm.net
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
Tel.: (601) 932-0028

*Additional Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

Dated: August 31, 2026

**WILSON SONSINI GOODRICH & ROSATI PC**

*/s/ Caz Hashemi*
Caz Hashemi (Bar No. 210239)
chashemi@wsgr.com
Benjamin M Crosson (Bar No. 247560)
bcrosson@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
650-493-9300
Fax: 866-974-7329

-and-

Jessica L Snorgrass (Bar No. 259962)
jsnorgrass@wsgr.com
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067

424-446-6900
Fax: 866-974-7329

-and-

John I. Karin (*pro hac vice*)
jkarin@wsgr.com
31 West 52nd Street, Fifth Floor
New York, NY 10019
212-497-7797
Fax: 866-974-7329

*Attorneys for Defendants The Trade Desk, Inc., Jeffrey T. Green, Laura Schenkein, and Samantha Jacobson*

## ORDER

Good cause appearing, the Court hereby approves this Order Establishing the Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs.

**IT IS SO ORDERED.**

Dated: September 2, 2026

Douglas F. McCormick
United States Magistrate Judge

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Jonathan D. Uslaner, hereby attest that Laura H. Posner, Molly J. Bowen, Hannah Ross, John Rizio-Hamilton, Prachi Patel, Steven J. Toll, John L. Davidson, Caz Hashemi, Benjamin M. Crosson, Jessica L. Snorgrass, and John I. Karin on whose behalf this filing is also submitted, have concurred in the content of this [Proposed] Order Establishing the Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs and have authorized its filing.

Dated: August 31, 2026

Respectfully Submitted:

By: */s/ Jonathan D. Uslaner*

Jonathan D. Uslaner
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

# APPENDIX 1
# ESI METADATA AND CODING FIELDS

A. For scanned Hard-Copy Documents, the Producing Party will provide the Metadata fields below.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a Placeholder image. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of Party producing the Document. |

B. For Documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the Parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BegAttach | Beginning Bates number of the attached documents. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| EndAttach | Ending Bates number of the attached documents. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the Producing Party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected. |
| All Paths | Identification of all file paths for duplicate copies. |
| Author/Creator | Author and/or Creator field extracted from the Metadata of a Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Date that an email was received (MM/DD/YYYY). |
| Date Sent | Date that an email was sent (MM/DD/YYYY). |
| Date Created | Date that a Document was created (MM/DD/YYYY). |
| Date Last Modified | Date that a Document was last modified (MM/DD/YYYY). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Time Created | Time that a Document was created (HH/MM/SS). |
| Time Sent | Time that an email was sent (HH/MM/SS). |
| Time Received | Time that an email was received (HH/MM/SS). |
| Time Last Modified | Time that a Document was last modified (HH/MM/SS). |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Subject | Subject line extracted from an email, e-document, or e-attachment. |
| Filename | The full name of the Native File. |
| Original Folder Path | Original location of the file. |

| **FIELD NAME** | **FIELD DESCRIPTION** |
|---|---|
| File Extension | The extension of the file. |
| Text/Chat Type | The type of text or chat (ie: SMS, MMS, Teams, Slack, Etc.). |
| Participants | The Participants of the text/chat conversation, represented by either their phone number, name, or both. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| SHA1 Hash | The SHA1 hash value of a Document. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (i.e., hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of Party producing the Document. |